# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

LEO H. LEARY, trustee, *vs.* LIBERTY TRUST COMPANY, trustee, & others.

Suffolk.   December 2, 1929. — June 9, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Trust*, Construction of instrument creating trust. *Devise and Legacy*, Lapse. *Words*, "Estate."

One of three brothers made a will in February, 1907, in a sixth clause of which he directed that a certain sum be placed in trust with the second brother, the income to be paid to the third brother during his life and on his death "to pay over to . . . [the second brother] if he be then living and in event of his death to his, said . . . [second brother's] estate, this trust fund absolutely free and discharged of said trust."   In a fifth clause the testator had placed another sum with the second brother in trust, the income to be paid to a niece during her life, the principal to the second brother on her death, and, if the second brother died before the termination of the trust, "upon such termination said trust fund shall thereupon pass to and become the property of . . . [the second brother's] estate absolutely free and discharged of said trust."   A twelfth clause gave the residue of the testator's estate to the second brother and provided that, if he should die before the testator, such residue should be given to two sons and a daughter of the second brother, "share and share alike."   In March, 1907, the second brother made a will, which remained unchanged at his death, in which the first brother was nominated as one of the executors and by which he placed one third of the residue of his estate in trust for his daughter and divided two thirds between his sons.   The second brother died in 1910.   The first brother and the other execu-

tors fully administered the estate. The first brother died in 1912 without having changed his will. One of the sons of the second brother died in 1913, leaving as his sole next of kin his mother, who assigned all her rights under the first brother's will to the second brother's other son, who died testate in 1926. The third brother died in 1927. The daughter of the second brother survived. Upon a petition by the trustee under the first brother's will for instructions, it was *held*, that

(1) Although the second brother was a "relation" of the first brother within the meaning of G. L. c. 191, § 22, that statutory provisions did not control, as, within the provisions of the statute, the will required "a different disposition";

(2) The words "said . . . [second brother's] estate" were not words of limitation defining the estate that the second brother was to have, but were words of purchase designating who were to be the recipients of the testator's bounty in the event of the second brother's death before the death of the third brother; and therefore the gift did not lapse;

(3) The words "said . . . [second brother's] estate" referred to the property belonging to the second brother disposed of by his will;

(4) In the circumstances, it must be assumed that the first brother, from his intimate knowledge of the will of the second brother and the administration of his estate, intended that, in the event which had happened, the principal of the trust should become a part of the second brother's estate and should be disposed of according to the provisions of his will;

(5) In the circumstances, one third of the fund was directed to be paid to the trustee under the will of the second brother for the benefit of his daughter, and two thirds to the executor of the will of that son of the second brother who was assignee from his mother of her interest in the trust which she had inherited from her other son.

PETITION for instructions, filed in the Probate Court for the county of Suffolk on February 11, 1929, by the trustee under the will of Michael Roughan, late of Boston, against Liberty Trust Company, trustee under the will of James Roughan, late of Boston, for the benefit of Winifred R. Guarente, formerly Winifred Roughan, Southern Trust and Commerce Bank of San Diego, California, executor of the will of Robert Roughan, Winifred R. Guarente and Dorothy F. Roughan.

Material allegations of the petition are stated in the opinion. The petition was heard by *Dolan*, J. No evidence was reported. The judge filed no statement of findings of fact. The final decree entered by his order is stated in the opinion. Winifred R. Guarente appealed.

The case was argued at the bar in December, 1929, before *Rugg*, C.J., *Crosby*, *Pierce*, *Carroll*, & *Wait*, JJ., and afterwards was submitted on briefs to all the Justices.

*J. W. Lowrance*, for Guarente.

*G. F. McKelleget*, for Southern Trust & Commerce Bank of San Diego, California, and Dorothy F. Roughan.

CARROLL, J.  This is a petition for instructions by a trustee under the will of Michael Roughan, hereinafter referred to as the testator, who died December 27, 1912.  The sixth clause of his will provided: "I give, devise and bequeath to my said brother, James Roughan, the sum of fifteen thousand dollars ($15,000), the same to be held by him in trust as the Robert J. Roughan Trust for the purpose of paying from the income therefrom for the care and support of my brother Robert J. Roughan during the life of said Robert J. and upon the death of said Robert J. to pay over to my said brother James if he be then living and in event of his death to his, said James' estate, this trust fund absolutely free and discharged of said trust."  James Roughan died October 24, 1910.  The brother Robert J. Roughan died September 11, 1927.  By the twelfth clause of the will of the testator he gave the residue of his estate to his brother James "but in event my said brother James dies before my decease then all of said rest and residue of my estate real personal and mixed of which I may die seized and possessed or to which I may be entitled at the time of my decease I give, devise and bequeath to said Robert Roughan, George F. Roughan and Winifred Roughan children of my brother James, share and share alike, to have and to hold the same to them, their heirs and assigns forever."  George F. Roughan and Robert Roughan, sons of James Roughan, are now dead.  George F. Roughan died intestate December 25, 1913.  Robert, the son of James, died on May 31, 1926. He left a will of which the Southern Trust and Commerce Bank of San Diego is the executor and under which Dorothy F. Roughan is the sole beneficiary.  The decree of the Probate Court ordered that two thirds of the Robert J. Roughan trust fund be paid to the Southern Trust and Commerce

Bank and one third to Winifred Roughan Guarente, daughter of James Roughan. Winifred R. Guarente appealed.

Under the sixth clause of the will of the testator he appointed his brother James trustee of the fund for the benefit of his brother Robert J. Roughan; and upon the death of Robert J. the fund was to go to James if then living and in the event of his death to James' estate. When the testator died, in 1912, his brother Robert J. was alive but James had died in 1910.

The question in the case is what distribution is to be made of the gift over of the Robert J. Roughan trust, the life tenant having died. It was provided in the sixth article of the testator's will that on the death of Robert J. the gift over was to go to the testator's brother James "if he be then living and in event of his death to his, said James' estate." Under G. L. c. 191, § 22, if a devise or legacy is made to a child or other relation of the testator who dies before the testator but who leaves issue surviving the testator, such issue shall take the same estate which the person whose issue they are would take if he had survived the testator, "unless a different disposition is made or required by the will." As James was a brother of the testator he was a "relation" within the meaning of the statute; and if the remainder was given to him without qualification, he having predeceased the testator, the children of James surviving the testator would take. See *Paine* v. *Prentiss*, 5 Met. 396; *Lewis* v. *Corbin*, 195 Mass. 520; *Thompson* v. *Pew*, 214 Mass. 520. But a different disposition was made or required by the will of the testator in this event. The testator directed that if James was not living on the death of Robert J. the remainder was to go to James' estate. The words "said James' estate" are not words of limitation defining the estate that James was to have; they are words of purchase designating who are to be the recipients of the testator's bounty in the event of James' death before the death of Robert J. These words being words of purchase the gift did not lapse. To hold that the words "James' estate" meant the amount of the estate James was to take would ignore the words "if he be then living and in event of his death." These words are dis-

junctive and are sufficient to prevent a lapse. It has been decided if a legacy is in the disjunctive that the death of the legatee does not cause a lapse. *Gittings* v. *M'Dermott*, 2 Myl. & K. 69. *In re Porter's Trust*, 4 Kay & Johns. 188. *Wright* v. *Trustees of Methodist Episcopal Church*, Hoff. Ch. 202. See *Kimball* v. *Story*, 108 Mass. 382, 385.

It might be argued that the word "estate" is too indefinite to be given a meaning, and there is authority for this contention. *In re Estate of Glass*, 164 Cal. 765. *Gardner* v. *Anderson*, 114 Kan. 778. But we have to carry out the testator's intention, if possible, in so far as it is not inconsistent with the rules of law. The testator desired that, if James was not living when Robert J. died, the remainder should go to the estate of James. In our opinion these words "James' estate" should be given a meaning in order to accomplish the intention of the testator. See *Lyman* v. *Sohier*, 266 Mass. 4, 8. The word "estate" may have several meanings. As used in the will of the testator it referred to the property belonging to James, and James disposed of all the "rest and residue of my estate" by will. His brother Michael (the original testator) did not change his will after the death of James, and he is presumed to have had knowledge of the contents of James' will, as he was one of the executors. The will of James was allowed in November, 1910, and the estate completely administered. We must assume, therefore, that the testator knew how and in what manner his brother James had disposed of his estate and that it was the intention of the testator that the gift over of the remainder of the Robert J. Roughan trust should go as directed by James in his will. It may be said that all that was meant by the testator was that the remainder in question was merely to become a part of the assets of James' estate, and pass under the statute of distribution as intestate property. This construction might be possible if James died intestate. We do not think this was the intention of the testator. He did not intend that some of the estate of James should be considered intestate property when with full knowledge of the provisions of James' will he allowed his own will to remain without alteration, knowing that when

Robert J. died the remainder of the trust would go to the estate of James if he was not then alive, that James had disposed of all his estate by will, and knowing to whom the estate of James was given.

That the testator had in mind that on the death of James the trust fund would pass to James' estate and become a part of it is shown by the fifth article of the testator's will, where a fund of $25,000 was placed with James in trust for the benefit of his niece, Mary A. A. Kennedy, during her life and upon her death without issue surviving her, this fund was to go to James "absolutely free and discharged of all trusts; and in event of his death before such termination of said trust, upon such termination said trust fund shall thereupon pass to and become the property of his estate absolutely free and discharged of said trust." The intention of the testator is more clearly and fully expressed in the fifth article than in the sixth; but in each of these articles he meant that the same disposition should be made, and that the remainder on the death of his niece Mary A. A. Kennedy and on the death of Robert J. should be assets of the estate of James.

The appellant argues that the gift over after the death of Robert J. did not go to those taking the estate of James by law "as distinguished from by 'will';" that is the remainder should be paid to the legal representatives of James' estate to be distributed by them to the persons who would be entitled to inherit James' estate if he had then died intestate. The manner in which the remainder was to be disposed of on the death of James if he died intestate is not involved in this discussion. James did not die intestate. He disposed of his estate by will. The remainder in question passed by the words in the testator's will "to his, said James' estate." The remainder passed in this way; it did not pass, in our opinion, under the doctrine of incorporation of a will by reference and making James' will a part of the testator's will. The principle of incorporation by reference does not apply because the sixth article of the testator's will made no reference to the will of James. In fact James' will was not in existence when the testator's will was executed. James'

will bore the date of March 14, 1907, while the testator's was made and executed in February, 1907. See *McLaughlin* v. *McGee,* 131 Md. 156; *Curley* v. *Lynch,* 206 Mass. 289. The remainder passed under the will of Michael, but it was his intention that this remainder should be taken by those whom James should designate, not in the sense of incorporating the will of James into his (Michael's) will by reference, but by making the remainder a part of James' estate, James having the right to dispose of the remainder as a part of his estate as he wished.

There is nothing in the contention that the remainder of the Robert J. trust fell into the residue of Michael's estate and was bequeathed by the residue clause of his will, by which the rest and remainder of his estate was given to his brother James if living at the death of the testator, and if James was not living then to the children of James, that is, to Robert Roughan, George F. Roughan and Winifred Roughan "share and share alike." The remainder of the Robert J. Roughan fund was disposed of as we have said by the sixth clause of Michael's will. See *Thompson* v. *Clarke,* 264 Mass. 56.

Under the construction which we think necessary to carry out the testator's intention in giving the remainder to James' estate, it would follow that this remainder, being a part of James' estate, was disposed of by the fifth, sixth and seventh articles of James' will, wherein he disposed of the residue of his estate. This estate was "completely administered" according to the third paragraph in the bill, which is admitted by the appellant's answer. This remainder became a part of the rest and residue of James' estate. By the fifth article of James' will, one third of the residue was given in trust to his daughter Winifred; by the sixth article provision was made for the disposition of this one third on her death; by the seventh article the remaining two thirds were given to his sons Robert and George F. Roughan.

It is alleged in the petition that when George F. Roughan died he left as his only heir at law his mother, now deceased; that she assigned to Robert, her son, the portion of the Robert J. fund which belonged to George F. It also is

alleged that Winifred assigned to her brother Robert all her right, title and interest in and "to the remainder interests belonging to her mother, the said Mary Roughan, as the sole heir of the said George F. Roughan in the trust created by the will of the said Michael Roughan for the benefit of the said Robert J. Roughan." These allegations are denied by the appellant. But the "entry of the decree implies a finding of every fact essential to the right entry of that decree permitted by the evidence." *Glazier* v. *Everett*, 224 Mass. 184, 185. *Star Brewing Co.* v. *Flynn*, 237 Mass. 213, 216. *Warecki* v. *United States Fidelity & Guaranty Co.* 270 Mass. 233, 237. It follows that two thirds of the fund belong to the Southern Trust and Commerce Bank or its successor, the executor of the will of Robert Roughan; that one third is in trust, the income to be paid to Winifred Guarente as provided in the fifth clause of her father's will, and upon her death the principal of the fund is to be disposed of as her father provided in the sixth clause of his will.

The decree is to be modified accordingly, and so modified it is affirmed. Costs as between solicitor and client are to be allowed in the discretion of the judge of probate.

*Ordered accordingly.*